UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHEILA GIBSON-HOLMES, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Case No. 3:08-0629 |
| ) | Judge Echols |
| FIFTH THIRD BANK, ) | |
| ) | |
| DEFENDANT. ) | |

## MEMORANDUM

Plaintiff Sheila Gibson-Holmes ("Gibson-Holmes") filed this employment discrimination action after her position as a foreign exchange trader at Defendant Fifth Third Bank ("Fifth Third") was eliminated. Pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 18), to which Plaintiff has responded in opposition (Docket Entry No. 25), and Defendant has filed a reply (Docket Entry No. 28).

## I. FACTUAL BACKGROUND

Plaintiff has been employed in banking since 1973 and claims to have pioneered foreign exchange banking in Tennessee. In June 2000, Plaintiff was hired by Fifth Third to be a foreign exchange trader in Nashville, Tennessee. Fifth Third had no local or state presence in the foreign exchange market prior to hiring Plaintiff, and Plaintiff was informed that Fifth Third had high expectations in relation to foreign exchange banking, including significant revenue growth each year.

Shortly after the Nashville foreign exchange desk was opened, Fifth Third hired Rose Ann Evans ("Evans") as a trader to assist Gibson-Holmes with the Tennessee and Alabama markets.

1

Plaintiff claims that Evans had no trading experience and Plaintiff was expected to train Evans. Evans resigned in 2005 for personal reasons. Throughout the life of Fifth Third's foreign exchange operation in Nashville, Plaintiff and Evans (both female) were the only foreign exchange traders on the Nashville desk.

When the Nashville desk first opened and for a couple of years thereafter, Fifth Third compensated Gibson-Holmes with a flat salary supplemented by an incentive compensation arrangement whereby Gibson-Holmes received a percentage of the foreign exchange revenues on deals she closed above and beyond any costs associated with those sales. This pay structure was intended to insure that Plaintiff received a guaranteed salary during the initial start-up period. Plaintiff knew that Fifth Third could change the incentive compensation plan at any time and, in fact, at some point in either 2004 or 2005, Plaintiff's income began to be based solely upon commissions. Others in the same position at Fifth Third worked under the same commission structure.

In early 2006, Fifth Third's foreign exchange management team in Cincinnati, Ohio, which consisted of Senior Vice President and Director of Capital Markets Jeff Chapman ("Chapman") and former Vice President of Product Development and Training, Mark Gargano ("Gargano") began looking at ways to lower costs and increase revenues in its newer and lower revenue markets. They decided to eliminate Fifth Third's local presence in either the St. Louis, Missouri, Florida or Nashville markets, each of which was staffed with one locally-based foreign exchange trader. Ultimately, they chose to close the Nashville desk.

Plaintiff claims that the reason the Nashville desk was chosen was due to her gender and also because other traders wanted the revenues from the Nashville office. While she admittedly has no

2

concrete proof to support those beliefs, she points to the following incidents which she claims suggest discriminatory animus on the part of Fifth Third.[1]

Early in her employment at Fifth Third Plaintiff was supervised by Mark Wendling ("Wendling") who would fly from Cincinnati to Nashville to assist her on sales calls. Plaintiff claims this shows that Fifth Third felt it necessary to send a male to help Plaintiff, even though she had over twenty-five years experience in foreign exchange trading. She also claims that when Wendling would return to Cincinnati, he would take credit for Plaintiff's successes and downplay her efforts. She also claims that Wendling received compensation based upon the success of the Nashville desk and that some clients which Plaintiff had developed were steered to Wendling.

Plaintiff asserts that similar treatment occurred in 2002 when Wendling's friend Joe Areddy ("Areddy") became her manager. Specifically, she claims that Areddy steered a client Plaintiff had developed to Wendling and that credit and compensation was given to Wendling for that client even though Areddy had assured Plaintiff she would receive full credit for bringing the client to First Third.[2] Further, when Plaintiff went on sales calls with Areddy, Areddy basically ignored her, but he would discuss sports and other matters with male traders.

---

[1] These incidents are set forth in Plaintiff's response brief. For the most part, the incidents are described in very general terms and lack much in the way of specifics. The Court has endeavored to link these events to Plaintiff's deposition testimony to better understand the factual underpinnings of Plaintiff's allegations.

[2] The client is not identified in Plaintiff's response brief. It appears from Plaintiff's deposition that the client is McWane Inc. out of Birmingham, Alabama. It also appears that the trades were done by McWane's subsidiaries in Canada and Australia and thus it was determined that the credit should be given to the desk covering the subsidiaries' territory. According to Plaintiff's deposition and the exhibits attached thereto, Plaintiff received a similar benefit when she received commissions for Norando, Inc. which is headquartered in Toronto, but which traded through a subsidiary in Nashville.

3

Plaintiff further claims that while she worked diligently to secure business from smaller financial institutions, she was not given credit for her efforts. In one such instance in 2003, Fifth Third sent a male employee from Cincinnati to Nashville to call on the client and rewarded that employee for bringing the business into the bank.[3]

Plaintiff also claims she had extensive knowledge of the Tennessee foreign exchange market, but management required her to spend much of her time introducing male relationship managers to corporate clients. She further claims she was instrumental in generating cross-sales (bringing foreign exchange customers to Fifth Third who then did other banking business), but that she was not credited for generating anything other than foreign exchange business. While this failure of recognition had no monetary effect, Plaintiff alleges Fifth Third downplayed her role and made it easier for Fifth Third to criticize her for not bringing in enough business.

Plaintiff also claims she was treated unfairly when she was given Evans as an assistant in 2002. At the time, the Tennessee market was failing to meet expected sales levels, yet Fifth Third assigned Evans even though she had no significant trading experience. Further, when Evans was not earning enough money based on salary plus commission, management elected to give Evans 50% of Plaintiff's incentive pay.

More generally, Plaintiff claims that other female traders were criticized more often than males. That criticism was directed mostly to low sales levels, but Plaintiff claims those levels resulted from the fact that clients were rerouted from female to male traders who were given credit for developing new books of business. In short, female employees were "set up to fail." (Docket

---

[3]Again, the precise facts underlying this allegation are not set forth in Plaintiff's response brief but it appears that the reference is to Franklin National Bank being brought in as a client of Fifth Third.

4

Entry No. 25 at 3). Further, female employees were often either "patronized" or ignored and the "[m]ale employees of Defendant continually and consistently socialized together during and after working hours to the exclusion of female employees." (Id. at 4).

For its part, Fifth Third claims there were valid business reasons for its decision to close the Nashville desk. Specifically, the St. Louis office opened nearly four years after the Nashville office and exceeded expectations for revenue growth in the two years since it opened. The Florida office was established in November 2004, and was part of a longer-term growth strategy within Fifth Third for the Florida market. In contrast, the Nashville market had a slower growth rate than other markets, and had not met its revenue goals in most of the years since its opening in 2000. Further, Nashville is in closer geographic proximity to Fifth Third's headquarters in Cincinnati than the other two offices and so could more easily be serviced by existing traders in Cincinnati.

Fifth Third informed Plaintiff of the decision to eliminate her position on March 23, 2006 and she was terminated at that time. Fifth Third offered her several options, including a severance package, the opportunity to apply for other jobs within Fifth Third, and an opportunity to take a foreign trading position in Cleveland, Ohio. Plaintiff rejected the severance package because it contained a non-compete clause which would prohibit her from working in the same area of employment. Plaintiff also rejected the foreign trading position in Cleveland. Plaintiff claims that she applied for positions with Fifth Third in Nashville, but was largely ignored.

Since Plaintiff's position was eliminated, the Nashville foreign exchange desk has not been reinstated. Instead, responsibility for the Tennessee market was transferred to Areddy who was already a foreign exchange trader in Cincinnati covering several markets.

5

During the relevant period, Fifth Third had in force a "General Harassment Avoidance Policy" through which employees could complain about sexual harassment. Plaintiff never filed a complaint about sexual harassment during her employment at Fifth Third.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on January 16, 2007 and filed suit in this Court on June 25, 2008. She brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Tennessee Human Rights Act ("THRA"), § 4-21-101 *et seq.*, for sexual harassment and discrimination based on gender (Counts I and II), and for retaliatory discharge in violation of the Tennessee Public Protection Act ("TPPA"), T.C.A. § 50-1-304 *et seq.* (Count III).

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine

6

issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

As indicated, Plaintiff brings sexual discrimination and harassment claims under Title VII and the THRA, along with a retaliatory discharge claim under the TPPA. Defendant moves for summary judgment on all claims, arguing that the state law claims are time-barred and her claims under Title VII fail as a matter of law.

**A. State Law Claims**

Defendant argues that Plaintiff's claims for discrimination and harassment under the THRA and her claim for retaliatory discharge under the TPPA are barred by the applicable statute of limitations. Plaintiff does not respond to these arguments and for this reason the Court could view the claims as abandoned and grant summary judgment because a party has an obligation to establish his or her claim. See, Dubose v. City of Morristown, 2009 WL 1766008 (E.D. Tenn. 2009). Regardless, it is clear that Plaintiff's state law claims are time-barred and also fail on the merits.

Claims for retaliatory discharge under the TPPA must be brought within one year of discharge from employment. Farmer v. Tennessee Dept. of Safety, 228 S.W.2d 96, 98 (Tenn. Ct. App. 2007). In this case, Plaintiff was terminated on March 23, 2006, but did not file suit until June 25, 2008, more than two years later. Hence, the TPPA claim is time-barred.

7

Plaintiff's retaliatory discharge claim also fails because, to prove such a claim, Plaintiff must show that (1) she was an employee; (2) she refused to participate in, or remain silent about, illegal activities; and (3) she was discharged *solely* because of her refusal to participate in or remain silent about such illegal activities. Sykes v. Chattanooga Housing Auth., 2009 WL 2365705 at * 11 (Tenn. Ct. App. 2009). Plaintiff has not shown that Fifth Third engaged in any illegal activities or that she complained about illegal activity. Her only complaints to Fifth Third were about a lack of credit and referrals and about the incentive split between her and her trading partner Evans, none of which has been shown by Plaintiff to be illegal or against public policy. Nor has Plaintiff shown that she was dismissed *solely* because of complaints about illegal activities as she readily admitted in her deposition that part of the reason for the closing of the Nashville office was simple greed on the part of other traders.

Plaintiff's claims under the THRA are also time-barred. The statute of limitations under the THRA is one year, T.C.A. § 4-21-311, and therefore an action must be filed within one year after the discriminatory practice ceases. Here, any alleged discriminatory action ceased as of the date of Plaintiff's termination, March 23, 2006, and therefore her Complaint filed more than two years later on June 25, 2008 comes too late.

Plaintiff THRA claims also fail on the merits. THRA claims are analyzed the same as Title VII claims. Sybrandt v. Home Depot, USA, Inc., 560 F.3d 553, 557 (6th Cir. 2009). As will be explained in the following section, Plaintiff has failed to establish a genuine issue of fact for trial on her claims that she was sexually harassed, or that she was subject to gender discrimination.

8

## B. Title VII Claims

### 1. Sexual Harassment Claims

In her Complaint, Plaintiff alleges that she was subjected to a hostile work environment because of sexual harassment. "To establish a prima facie case of sexual harassment based on hostile work environment, [a plaintiff] must adduce evidence demonstrating that '(1) she is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.'" Gallagher v. C. H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009)(quoting, Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008)). Here, Defendant argues Plaintiff has failed to establish any elements of a sexual harassment case, other that to show that she is a member of a protected class and Plaintiff presents no arguments to the contrary.

Plaintiff has not established that she was subjected to harassment based upon sex. Quite the contrary, she admitted in her deposition that no one ever made any sexual or sexually motivated statements to her. All she testified was that some male employees (and in particular Areddy) were rude and ignored her, but at the same time admitted that those same male employees also ignored and were rude to others, including males. However, to establish a sexual harassment claim, Plaintiff must show that the offensive conduct or statements are sexual in nature, unless "it can be shown that but for the employee's sex, she would not have been the object of harassment." Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000). Plaintiff makes no such showing in this case and the mere fact that she was treated rudely or ignored is not enough to establish a claim for sexual

9

harassment because Title VII was never intended as "a code of workplace civility." Grace, 521 F.3d at 679.

Plaintiff's sexual harassment claim also fails because she has not shown, or even argued, that her workplace at Fifth Third was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or persuasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "Except in cases of truly egregious conduct, a workplace does not become a hostile work environment on the basis of isolated instances of harassment." Howington v. Quality Restaurant Concepts, LLC, 285 Fed. Appx. 436, 443 (6th Cir. 2009). Here, even if Plaintiff established that any harassment was based on sex, she has failed to show that said harassment was egregious or that it permeated the workplace. Quite the opposite, the record shows that Areddy, the alleged primary harasser, was based in Cincinnati and interacted with Plaintiff only intermittently. See, Johnson v. Rumsfield, 238 Fed. Appx. 105, 108 (6th Cir. 2007)(to survive summary judgment, a plaintiff must show that conduct was either egregious or that it was so frequent as to be pervasive and merely arguing she was "continually harassed" is not enough).

Finally, Plaintiff's sexual harassment claim fails because she has not shown that Fifth Third knew or should have known about any alleged harassment by a coworker or that it failed to exercise reasonable care to prevent and correct promptly any harassing conduct by a supervisor. See, Barrett v. Whirlpool Corp., 556 F.3d 501, 516 (6th Cir. 2009). Fifth Third has a sexual harassment policy that provides a procedure by which employees can report alleged harassment. However, Plaintiff never reported any alleged harassment pursuant to that policy, nor has she shown how Fifth Third knew or should have known about any alleged sexual harassment.

10

## 2. Gender Discrimination Claims

Plaintiff alleges she was treated differently than male foreign exchange traders because of her sex. Plaintiff has presented no direct evidence of gender discrimination and, accordingly, the Court turns to the indirect method for establishing a disparate treatment case.

Disparate treatment cases based upon indirect evidence are analyzed under the McDonnell Douglas/Burdine[4] burden-shifting framework. Under this framework, Plaintiff must initially make out a *prima facie* case by producing evidence that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action she was otherwise qualified for her position; and (4) she was replaced and/or treated less favorably than a similarly situated male employee. Mitchell v. Toledo Hosp., 864 F.3d 577, 583 (6th Cir. 1992). Where the discrimination is alleged to have occurred as a part of a reduction in force, the fourth prong of the *prima facie* case incorporates a heightened standard because Plaintiff must also "produce 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" Gragg v. Somerset Technical College, 373 F.3d 763, 767 (6th Cir. 2004). Plaintiff's burden at the *prima facie* stage is not onerous and Plaintiff need only "present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Macy v. Hopkins County School Bd., 484 F.3d 357, 364 (6th Cir. 2007).

---

[4]McDonnell Douglas v. Green, 411 U.S. 792 (1981) and Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981).

11

If Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action, McDonnell Douglas, 411 U.S. at 804, which "must be sufficient to justify a judgment for the defendant." Wright v. Murray Guard Inc., 455 F.3d 702, 706 (6th Cir. 2006). "If the defendant meets this burden, the presumption of discrimination created by the prima facie case falls away . . ., and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination." Id. at 706-707 (citation omitted). "Throughout this burden-shifting approach, the plaintiff continues to bear the burden of proving, by a preponderance of the evidence, the intent to discriminate." Id. at 707.

Apart from Plaintiff's claim that the closing of the Nashville desk and her consequent termination was because she is a female, the precise grounds for her gender discrimination claim are unclear. In her deposition and in her response brief Plaintiff claims she was discriminated against on the basis of sex when management decided to split her commissions with Evans before Evans left in 2005; when a trader was given recognition for a Franklin National Bank deal in 2003 (instead of Plaintiff who had done the legwork); and when Areddy steered a client named McWane, Inc. to Wendling in 2004 who in turn received the commissions. However each of these was a discrete event, and none occurred within three hundred days before Plaintiff filed a charge with the EEOC on January 16, 2007. As such, the claims are time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

Even if each of these allegations can somehow be construed as part of a continuing violation, Plaintiff has failed to establish a *prima facie* case with respect to any of them. While Plaintiff

12

complains about Evans receiving half of her commissions, she presents absolutely no evidence that similarly situated male traders were not required to split commissions in like circumstances. In fact, in her deposition she admitted that she did not even know how male or female traders in other markets were compensated and makes no effort in her reply brief to establish that she was treated dissimilarly in this regard.

Plaintiff's complaint about another trader being given recognition for the Franklin National Bank deal fails because she has not shown that she suffered an adverse employment action. "Under the adverse employment action prong, [plaintiff] must demonstrate that she experienced a 'materially adverse change in the terms and conditions of [her] employment,'" Coleman v. ARC Automotive, Inc., 255 Fed. Appx. 948, 951 (6th Cir. 2007)(quoting, Bowman, 220 F.3d at 461), and contemplates "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007). Plaintiff has established nothing rising to such a level. To the contrary, she admitted in her deposition that the deal did not involve foreign exchange business, her compensation plan did not provide for compensation for any such in-house referrals, and she lost no revenue or pay because of the Franklin National Bank deal. The fact that Plaintiff may not have received the "Shoe Leather Award" (as she claimed in her deposition) does not suggest any significant change in benefits so as to show a tangible employment action. See, Douglas v. Donovan, 559 F.3d 549, 553 (D.C. Cir. 2009)(failure to recommend employee for "Presidential Rank Award" not tangible employment action); Arensdorf v. Snow, 259 Fed. Appx. 639, 643 (5th Cir. 2007)(failure to award employee a "certificate of good performance" was not an "ultimate employment action").

13

Plaintiff's complaint about the McWane Inc. deal and Wendling's receipt of commissions for that deal fail because she has not shown that she was treated any differently from males. Plaintiff did not receive credit for the McWane transaction because, while the parent company of the client was based in Plaintiff's territory, the foreign exchange trading was done by a foreign subsidiary in a territory covered by Wendling. Apparently, Plaintiff was the beneficiary of the same set-up with respect to a client named Norando Inc. which, though headquartered in Toronto did its foreign exchange trading out of Nashville. Simply put, Plaintiff has forwarded absolutely no evidence that she was cut-off from receiving commissions on McWane Inc.'s trade simply because she is a female.

Finally, Plaintiff claims that she was terminated because of her sex. As indicated, in a reduction in force case such as this, Plaintiff must not only show that she is a member of a protected class who was terminated despite being qualified, but also produce some direct, circumstantial, or statistical evidence which suggests she was selected for discharge because of her sex. Plaintiff makes absolutely no such showing in this case. All she presents is that which she stated in her deposition: she believes the other traders were greedy and she believes she was unfairly treated, particularly by Areddy. However, the former suggests no discriminatory animus as the other traders undoubtedly would be happy with the revenues whether they came from the termination of a male or a female trader. The latter also does not establish that Plaintiff was terminated because of her sex because Plaintiff offers nothing other than her own speculation and belief to support the contention. This is insufficient to establish a *prima facie* case of employment discrimination. See, Sperber v. Nicholson, 2009 WL 2475296 at *1 (6th Cir. 2009); Campbell v. Univ. of Akron, 211 Fed. Appx. 333, 347 (6th Cir. 2006); Clark v. Alcan Alum. Corp. 41 Fed. Appx. 767, 777 (6th Cir. 2002).

14

Even assuming *arguendo* that Plaintiff established a *prima facie* case, her claim fails because Defendant has articulated a legitimate nondiscriminatory reason for its choosing to close the Nashville desk and Plaintiff has not shown that reason to be pretextual. Specifically, Defendant claims to have closed the Nashville desk as part of a reduction in force and the Sixth Circuit has held that a reduction in force is a legitimate non-discriminatory reason for an adverse employment decision, even where the reduction in force is based on a desire to increase profits. Bell v. Prefix, Inc., 321 Fed. Appx. 423, 428 (6th Cir. 2009).

Since Fifth Third has articulated a legitimate-nondiscriminatory reason for its action, the burden shifts to Plaintiff to show that the stated reason is a pretext for unlawful discrimination. Plaintiff may show pretext by establishing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff has not shown that the decisionmakers, Chapman and Gargano, lied about the reason for choosing the Nashville desk or that either harbored any sort of discriminatory animus. In fact, she never mentions either of those individuals in response to Fifth Third's Motion for Summary Judgment. Nor does she argue that the closing of the Nashville desk was not part of a legitimate reduction in force, but instead merely claims that the St. Louis desk or the Florida desk should have been closed instead of hers. She makes no sound argument for that position, but rather merely posits that the Nashville desk must have been chosen because it was headed by a woman. "However, mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Peters v. Lincoln Elec. Co., 285 F.3d 456, 470 (6th Cir.

15

2002). "To avoid summary judgment, the plaintiff is required to produce evidence that the employer's proffered reasons were factually untrue." Id. Plaintiff has produced no such evidence and summary judgment will be granted on Plaintiff's gender discrimination claims.

### IV. **CONCLUSION**

On the basis of the foregoing, Defendant Fifth Third's Motion for Summary Judgment (Docket Entry No. 18) will be granted and Plaintiff Gibson-Holmes' claims against Defendant will be dismissed with prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE